Ronald L. McNinch
PO Box 5224
Mangilao, Guam 96923
Cell Phone: 671-488-8889
Email: govguam@gmail.com
Pro Se

**FILED**
DISTRICT COURT OF GUAM

AUG 22 2025



**JEANNE G. QUINATA
CLERK OF COURT**

IN THE DISTRICT COURT OF GUAM

--------

RONALD L. MCNINCH, on behalf )
of himself, Pro Se )    CIVIL ACTION NO. ____ **25-00034**
                Plaintiff, )
                                       )
        vs. )
                                       )
GUAM AND THE HONORABLE LOU )
LEON GUERRERO, ).    COMPLAINT
personally and in her official )
capacities, together with all others )
similarly situated. )
                Defendants. )
_____ _____ )

**Introduction**

1. This is a civil rights, constitutionality of Guam statutes and first amendment and 14th amendment action. This complaint alleges violations in Guam election laws related to several elected offices specified in federal laws. These offices include the Delegate to the US House of Representatives, the Governor of Guam, Members of the Guam Legislature and the Guam Attorney General.

2. In the federal laws that authorize these positions, the methods and process used to elect these persons are specified. The elections for these offices require placement on a ballot at the general election. Guam election laws require candidates for these positions to endure a predominantly partisan primary election to receive placement on the general election ballot. Further, Guam law makes it very difficult for independent candidates to be placed on the ballot by using differing election outcome standards at the partisan primary. This effectively bars certain candidates from placement on the general election ballot and denies Guam voters the opportunity to vote for a candidate of their choice. The general election ballots for these offices should include all eligible candidates.

3. Further, the use of a partisan primary for ballot placement chills the ability for non-partisan and independent candidates to be named on the general election ballot. While this is not a class action, the plaintiff and all others similarly situated are precluded from voting for candidates of their choice at the general election because Guam primary elections effectively bar certain candidates from the general election

ballot. Current Guam law allows for frequent party raiding and further creates a monopoly for the two traditional political parties on Guam. Party raiding occurs when opposing party members vote in primary elections as a strategic method to disrupt or interfere with legitimate voters. This happened notably in 1998 and 2018.

4. The primary election practices appear to also contribute to independent or non-affiliated  under-representation in the Guam Legislature. The plaintiff attempted to lobby the Guam legislature to bring election processes in line with federal laws but there was no interest to make corrections.

5. Therefore, unless this Court enjoins the defendants from pursuing this current course of action and mandates corrections,  the plaintiff and all other Guam voters will  not be permitted to vote  for the candidates of their choice at future Guam general elections. Also, candidates are often subjected to the practice of party raiding at the partisan primary which interferes with their ability to run at the general election. Other US territories  appear to follow federal laws and do not use partisan elections as a filter to placement on the general election ballot. Partisan primaries in these jurisdictions are used for party selections and candidates not selected are allowed to run on the general election ballot as independent.

## Jurisdiction and Venue

6. This action alleges violations of federal laws. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 48 U.S.C. §1424(b).

7. Defendants are Guam, an entity that is a part of the Government of Guam and the Governor of that entity. Their actions are taking place on Guam. Accordingly, the venue is appropriate to this Court.

## Parties

8. Defendant Guam is a Territory of the United States. The structure of its government was set forth in the Organic Act of Guam passed by the US Congress in 1950.

9. Defendant Lou Leon Guerrero is the Governor of Guam and the Chief Executive of the Government of Guam. Under Federal Rules of Procedure 4(j)(2), the chief executive officer is the appropriate party in a state case.

10. Plaintiff Ronald McNinch is a resident of Guam, a registered Guam voter since 1996 and has voted in Guam elections since 1996. The plaintiff is also an elected office holder in a non-partisan office.

**Facts**

1.  Primary elections are not provided for in the federal laws that apply to certain Guam Offices. These offices include the Delegate to the House of Representatives, the Governor, Senators and the Attorney General.

2.  Title 3, Chapter 15 of the Guam Code requires all candidates to meet certain primary election thresholds in order to be named on the general election ballot. Candidates not meeting these thresholds at the partisan primary election are not allowed to be included on the general election ballot. Federal laws are not being followed. The use of partisan primaries as a bar to inclusion on the general election ballot violates basic voter rights in a number of ways.

3.  In the Guam Organic Act at 1423(b), Legislature of Guam, "... in any elections to the legislature, every elector shall be permitted to vote for the whole number of at large candidates to be elected..." Currently, Guam does not have legislative districts, all candidates run at large. The primary election restricts votes by creating de facto political party districts and apportionments leading to the biennial general elections. For many years, only candidates for select offices who are named on a partisan column in these two parties are allowed to proceed to the general election.

4.  "General election" and "primary election" are specific terms of art that are defined in federal law and federal rules. The offices on Guam requiring a general election in federal law include the delegate to the US House of Representatives, the Governor, the Guam Legislature and the Guam Attorney General.

5. On Guam, a "general election" is further defined in the Guam Organic Act. The date for this general election is set in this act at 48 U.S.C. Section 1422 for the Office of Governor. The next general election for Guam will occur on November 3, 2026. There is ample time for the government of Guam to correct the election process and follow federal laws.

6. In federal laws related to Guam elected positions, the offices of Delegate to Congress, Governor, Legislature and Attorney General do not provide for primary elections. These offices require general elections. The requirements for these elections can be found in the Guam Organic Act at Section 1422, Section 1421g(d)(2), and Section 1423(d). The Delegate to Congress for Guam can be found in federal law at 48 U.S.C. Ch. 16, Section 1712.

7. A "general election" in the Guam Organic Act set the date for the first election for the Guam Governor as November 3, 1970. This date was also the date used for all federal elections in 1970. The Guam Organic Act also requires Guam to hold a general election for governor every fourth year starting in 1974.

8. A "general election" in the Delegate to Congress is specified in PL 92-271, Sec. 2.(a). "The Delegate shall be elected... at the general election of 1972 and thereafter at such general election every second year thereafter."

9. Primary elections are not mentioned in the various federal laws related to these offices on Guam, but other territories have specific federal law based provisions providing for primary elections. While Guam may hold primary elections for party purposes, the use of partisan primary elections for general election ballot inclusion

is improper and interferes with a voters ability to vote for the candidate of their choice at general elections. Historical election data supports this point.

10. Guam has a Delegate to Congress that is elected on a two year cycle. The election cycle is set in federal law. The delegate position requires a general election.

11. In both the Guam Delegate to the US House and Governor of Guam election processes, candidates are selected at a general election. If no candidate receives a majority, a runoff election is required. This is a specific and distinct election process to ensure these candidates have a solid majority.

12. Title 3 of the Guam Code Annotated §2101(a)(1) outlines the composition of the election commission board. Six of the seven board members are appointed based on partisan interests. Currently the two active political parties on Guam have three members each on this commission. The seventh member is non-partisan. This particular composition makes it very difficult for the Guam Election Commission to internally correct questions related to the partisan primary process.

13. Further, the political parties are allowed patronage privileges by the Guam Election Commission to staff primary elections with party loyalists. Workers are paid five hundred dollars for their work on election day. This makes changes difficult.

14. Title 3 of the Guam Code Annotated Chapter 15 is the Guam law that reflects the "Conduct of Primary Elections." Under this section of the Guam Code, participating in the partisan primary election is required for placement on the General Election Ballot.

15. In many respects, Guam the US Virgin Islands are paired in federal law. In the case of the Delegate to Congress, the same statute is used. Both provide for a general election and runoff election process. The USVI follows federal law, Guam does not.

16. Under 3 GCA 15, candidates must meet certain election thresholds at a primary election in order to be included on the general election ballot. Under the Guam Organic Act and the federal law that provides for a Delegate to Congress, a "general election" is required for election. The CNMI and American Samoa have a primary option in the case of delegate elections. In the case of Guam and the US Virgin Islands (USVI), a general election is required for electing the Governor and Delegate to Congress. If no candidate receives a majority vote, a runoff is held fourteen days later. The USVI does hold primary elections for party purposes but does not use primaries as a method to determine inclusion on the general election ballot. Candidates not securing a party column at the partisan primary are included on the general election ballot in the independent column. Further, the USVI schedules runoff elections well in advance on their election calendars. The USVI also has a regular practice to conduct runoff elections if needed.

17. In the last thirty years, various US Supreme Court and other federal court precedents have shaped the structure and conduct of US elections. Several of these cases specifically changed the way primary elections are conducted.

18. The Guam Organic Act Bill of Rights 1421b(a) provides for a right to peaceably assemble and right to petition. This right is also included in the First Amendment to the US Constitution and includes the freedom of association.

8

19. The Guam Organic Act Bill of Rights 1421b(m) provides that only citizenship, civil capacity or residence shall be imposed on any voter. Voters on Guam are required to participate in political party centered elections at primary elections on Guam in order to fully participate in the general election process. Ballot access should not be blocked by party elections.

20. The Guam Organic Act Bill of Rights 1421b(u) extends the US Constitution first to ninth amendments inclusive to Guam. The First Amendment includes a right of association.

21. The Guam Organic Act Bill of Rights 1421b(u) extends the US Constitution 14th Amendment, second sentence section 1 to Guam; " ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

22. All Guam Laws that are inconsistent with (1421b) are repealed to the extent of such inconsistency. (1421b(u).)

23. Election statistics from the past ten general elections show no independent candidates survive the partisan primary. In the vast majority of years, they do not even try. Limiting ballot access at the partisan primary is one key cause of this lack of representation. Political parties could choose to be more inclusive and correct this imbalance. It is not in their best interest to do so, even though it is the right thing to do. The Voting Rights Act at 52 USC 10304(b) States, "(b) Any voting qualification

9

or prerequisite to voting, or standard, practice, or procedure with respect to voting that has the purpose of or will have the effect of diminishing the ability of any citizens of the United States on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, to elect their preferred candidates of choice denies or abridges the right to vote within the meaning of subsection (a) of this section."

24. In the last 60 years, no general election on Guam has produced an independent Senator. Similarly, in the last 50 years, no independent candidates appear to have been allowed to run for Delegate or Governor at the general election.

25. The Guam Law based structure and process of Guam Primary Elections encourages the practice of party raiding, which interferes with both voter and candidate rights.

26. In 1998 and 2018, there was obvious party raiding at the primary. This type of activity interferes with basic voting rights of citizens.

27. The plaintiff is not allowed to vote for otherwise eligible candidates at Guam general elections due to the improper use of partisan primaries. Primary elections should not be used for the delegate, governor, senator or attorney general election processes. Objective and fair ballot access methods should be used.

10

**First Claim for Relief (Against Guam and the Guam Election Commission For Violations of 48 USC 16, Section 1712, Regarding the Election of Delegate to the US House of Representatives for Guam)**

28. Plaintiff incorporates all previous allegations of this complaint.

29. The election to Delegate should occur at the general election with a runoff required if no candidate receives a majority. The defendants have imposed ballot access restrictions using a partisan primary election that are improper.

30. Accordingly, defendants Guam and the Governor are violating section 1712 of 48 USC 16.

**Second Claim for Relief (Against Guam and the Guam Election Commission For Violations of 48 USC 8A, Section 1422, Regarding the Election of the Governor of Guam)**

31. Plaintiff incorporates all previous allegations of this complaint.

32. The election to Governor of Guam should occur at the general election with a runoff required if no candidate receives a majority. The defendants have imposed ballot access restrictions using a partisan primary election that are improper.

33. Accordingly, defendants Guam and the Governor are violating section 1422 of 48 USC 8A.

11

**Third Claim for Relief (Against Guam and the Guam Election Commission For Violations of 48 USC 8A, Section 1423(b) and 1423(d), Regarding the Election of the Legislature of Guam)**

34. Plaintiff incorporates all previous allegations of this complaint.

35. Under 1423 (d), the election to the Legislature of Guam should occur at the general election which is the held biennially in even numbered years on the first Tuesday after the first Monday in November. The defendants have imposed ballot access restrictions using a partisan primary election that are improper.

36. Under 1423(b), in any elections to the legislature, every elector shall be permitted to vote for the whole number of at large candidates to be elected.

37. Under 52 USC 10304(b), no standard or practice may be used to diminish the right of voters to vote.

38. Accordingly, defendants Guam and the Governor are violating section 1423(b)and 1423(d) of 48 USC 8A and 52 USC 10304(b).


**Fourth Claim for Relief (Against Guam and the Governor of Guam For Violations of 48 USC 8A, Section 1421g(d)(2), Regarding the Attorney General of Guam)**

39. Plaintiff incorporates all previous allegations of this complaint.

40. The election for the Attorney General of Guam should occur at the general election held in the same year the Governor is elected. The defendants have imposed ballot access restrictions using a partisan primary election that are improper.

41. The term general election has a specific meaning.

42. Accordingly, defendants Guam and the Guam Election Commission are violating section 1421g(d)(2) of 48 USC 8A.

**Fifth Claim for Relief (Against Guam and the Governor of Guam For Violations of 48 USC 8A, Section 1421b(d)(u), Regarding First Amendment Freedom of Association)**

43. Plaintiff incorporates all previous allegations of this complaint.

44. Guam primary elections interfere with the First Amendment Right to Freedom of Association. Candidates and voters should not be required to participate in party centered elections to obtain ballot placement at the general election for public offices specified in federal law.

45. Preference or monopolies should not be given to associations in the voting process.

46. Accordingly, defendants Guam and the Guam Election Commission are violating section 1421b(a)and 1421b(u) of 48 USC 8A.

**Sixth Claim for Relief (Against Guam and the Governor of Guam For Violations of 48 USC 8A, Section 1421b(m), Regarding Qualifications of Voters)**

47. Plaintiff incorporates all previous allegations of this complaint.

48. Guam primary elections require voters to associate with and hold political opinions on partisan political interests. Candidates and voters should not be required to participate in partisan political activities as a qualification to voting in a general election. Only citizenship, civil capacity and residence shall be imposed.

49. Accordingly, defendants Guam and the Guam Election Commission are violating section 1421b(m) of 48 USC 8A.

**Seventh Claim for Relief (Against Guam and the Governor of Guam For Violations of 48 USC 8A, Sections 1422, 1423b, 1421g(d)(2) and 48 USC 16, Section 1712 )**

50. Plaintiff incorporates all previous allegations of this complaint.

51. Federal law requires several offices to use general elections for the selection of officials. Using plain meaning, a general election is specified in federal law and primary elections are not allowed as general election thresholds for these offices.

52. Accordingly, defendants Guam and the Guam Election Commission are violating 48 USC 8A, Sections 1422, 1423b, 1421g(d)(2) and 48 USC 16, Section 1712 ).

**Eighth Claim for Relief (Against Guam and the Governor of Guam For Violations of 48 USC 8A, Sections 1422, 1423b, 1421g(d)(2) and 48 USC 16, Section 1712 )**

53. Plaintiff incorporates all previous allegations of this complaint.

54. The official capacity defendants are denying plaintiff and those similarly situated the ability to vote for candidates of their choice at general elections. This is a violation of various parts of the Organic Act of Guam, and the Fifth and Fourteenth Amendments.

55. The laws listed in the last paragraph can be enforced through 42 USC 1983. Therefore the official capacity defendants are violating Section 1983.

14

56. Alternatively, each of the laws identified in paragraph 48 permits those who rights are being violated to seek redress and equitable relief to halt the violations.

**Ninth Claim for Relief (Against Guam and the Governor of Guam For Violations of Section 2 of the Voting Rights Act )**

57. Plaintiff incorporates all previous allegations of this complaint.

58. The official capacity defendants are denying plaintiff and those similarly situated the ability to vote for candidates of their choice at general elections. This is a violation of Section 2 of the Voting Rights Act.

59. The laws listed in the last paragraph can be enforced through 42 USC 1983. Therefore the official capacity defendants are violating Section 1983.

60. Alternatively, each of the laws identified in paragraph 48 permits those who rights are being violated to seek redress and equitable relief to halt the violations.

**Pro Se Litigant Coordinating Points**

A. The plaintiff would like to respectfully request from the Court full consideration of this filing, even though the plaintiff is pro se and has limited education on legal matters.

B. Under GNLR 13.1, the Plaintiff would like to request access to the court's law library or other resources provided to attorneys practicing before the court.

C. Under GNLR 15.1(a)(3), the Plaintiff would like to request that the media be given full access to the proceedings, including video and/or audio. The questions in this case

15

are matters of strong civic interest and related to matters of compliance with federal law.

D. The plaintiff believes that a number of interested parties may desire to file amicus briefs on these questions. The plaintiff does not object to amicus briefs.

E. Under GNLR 16.1, the Plaintiff would like to request permission to have electronic devices in the court for reference or information purposes.

F. The plaintiff would like to respectfully request an oral hearing on this complaint.

G. The plaintiff is aware that as a pro se litigant and not an attorney, the clerk of the court will be updated on the plaintiff's contact information as needed. Further, the plaintiff will consult with the clerk of the court regarding serving the documents in a timely manner.

H. The plaintiff is aware that this complaint will likely be referred to a magistrate and consents to this. (CVLR 73(a))

I. The plaintiff will prepare a full memorandum of support on these questions. In the interim, the plaintiff has attached copies of selected laws or rules mentioned in this complaint for direct reference. These are labelled Attachments A-F.

WHEREFORE, Plaintiff seeks a judgement:

A. Enjoining the defendants from engaging in their current policy of preventing plaintiff and all others similarly situated from voting for eligible candidates at the general election;

16

B. Enjoining the defendants from using partisan primary election results to determine general election ballot inclusion;

C. Declaring that the defendants' conduct has been and would be if continued, a violation of US law;

D. Mandating that Guam election processes be corrected before the 2026 Guam General Election.

E. Awarding costs for fees as authorized by all relevant provisions of law. As a pro se litigant, the plaintiff is only requesting filing fees; and other related costs such as document service.

F. Awarding any other appropriate relief.

**Certification and Closing:**

Under Rule 11 of the Federal Rules of Civil Procedure, by presenting to the court this pleading, the Plaintiff certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Date of Signing: _August 22, 2025_

Signature of Plaintiff; Pro Se, _Ronald L. McNinch_

Printed Name of Plaintiff: Ronald L. McNinch, Pro Se

## ATTACHMENTS FOR REFERENCE

A.  11 CFR Section 100.2(b)(1)    Federal Rule Definition of "General Election"

B.  48 USC 8 Section 1423(d)    Legislature Biennial Elections – general elections

C.  48 USC 8 1422    Governor – general elections

D.  48 USC 8 1421g(d)(2)    Guam Attorney General – general elections

E.  48 USC 16 1712    Guam Delegate to Congress – general elections

F.  48 USC 16 1732(d)    American Samoa – primary elections allowed

# 11 CFR § 100.2 - Election (52 U.S.C. 30101(1)).

CFR

### § 100.2 Election (52 U.S.C. 30101(1)).

**(a)** *Election* means the process by which individuals, whether opposed or unopposed, seek nomination for election, or election, to Federal office. The specific types of elections, as set forth at 11 CFR 100.2 (b), (c), (d), (e) and (f) are included in this definition.

**(b)** *General election.* A general election is an election which meets either of the following conditions:

**(1)** An election held in even numbered years on the Tuesday following the first Monday in November is a general election.

**(2)** An election which is held to fill a vacancy in a Federal office (*i.e.*, a special election) and which is intended to result in the final selection of a single individual to the office at stake is a general election. See 11 CFR 100.2(f).

**(c)** *Primary election.* A primary election is an election which meets one of the following conditions:

**(1)** An election which is held prior to a general election, as a direct result of which candidates are nominated, in accordance with applicable State law, for election to Federal office in a subsequent election is a primary election.

**(2)** An election which is held for the expression of a preference for the nomination of persons for election to the office of President of the United States is a primary election.

**(3)** An election which is held to elect delegates to a national nominating convention is a primary election.

**(4)** With respect to individuals seeking federal office as independent candidates, or without nomination by a major party (as defined in 26 U.S.C. 9002(6)), the primary election is considered to occur on one of the following dates, at the choice of the candidate:

**(i)** The day prescribed by applicable State law as the last day to qualify for a position on the general election ballot may be designated as the primary election for such candidate.

**(ii)** The date of the last major party primary election, caucus, or convention in that State may be designated as the primary election for such candidate.

**(iii)** In the case of non-major parties, the date of the nomination by that party may be designated as the primary election for such candidate.

**(5)** With respect to any major party candidate (as defined at 26 U.S.C. 9002(6)) who is unopposed for nomination within his or her own party, and who is certified to appear as that party's nominee in the general election for the office sought, the primary election is considered to have occurred on the date on which the primary election was held by the candidate's party in that State.

**(d)** *Runoff election. Runoff election* means the election which meets either of the following conditions:

**(1)** The election held after a primary election, and prescribed by applicable State law as the means for deciding which candidate(s) should be certified as a nominee for the Federal office sought, is a runoff election.

**(2)** The election held after a general election and prescribed by applicable State law as the means for deciding which candidate should be certified as an officeholder elect, is a runoff election.

**(e)** *Caucus or Convention.* A caucus or convention of a political party is an election if the caucus or convention has the authority to select a nominee for federal office on behalf of that party.

## SUBCHAPTER 3
## THE LEGISLATURE

### § 1423. Legislature of Guam.

**(a) Unicameral Nature; Powers**. The legislative power and authority of Guam shall be vested in a legislature, consisting of a single house, to be designated the "Legislature of Guam", herein referred to as the legislature.

**(b) Size; Election At-large or by Districts; Limitations.** The legislature shall be composed of not to exceed twenty-one members, to be known as senators, elected at large, or elected from legislative districts, or elected in part at large and in part from legislative districts, as the laws of Guam may direct: Provided, That any districting and any apportionment pursuant to this authorization and provided for by the laws of Guam shall not deny to any person in Guam the equal protection of the laws; And provided further, That in any elections to the legislature, every elector shall be permitted to vote for the whole number of at-large candidates to be elected, and every elector residing in a legislative district shall be permitted to vote for the whole number of candidates to be elected within that district.

**(c) Reapportionment; Federal Census Base.** Any districting and related apportionment pursuant to this section shall be based upon the then most recent Federal population census of Guam, and any such districting and apportionment shall be reexamined following each successive Federal population census of Guam and shall be modified, if necessary, to be consistent with that census.

**(d) Timing of Biennial Elections.** General elections to the legislature shall be held on the Tuesday next after the first Monday in November, biennially in even-numbered years. The legislature in all respects shall be organized and shall sit according to the laws of Guam.

> **SOURCE:** § 10 of Act of Aug. 1, 1950 (Organic Act); amended by Public Law 89-552, § 1, Sept. 2, 1966, 80 Stat. 375. Codified as 48 U.S.C. § 1423. The districting of the Guam Legislature has been implemented by Guam P.L. 13-152, but later nullified by court action and not revived.
>
> P.L. 98-213, § 29(b), Act of Dec. 8, 1983, 97 Stat. 1459, § 1460, amended Subsection (c) by deleting the first clause of the former section which limited the power of the Guam Legislature to make changes in the manner of selection no more often than every ten years.

B

## SUBCHAPTER 2
## EXECUTIVE BRANCH

### § 1422. Governor; Lieutenant Governor: Powers, Duties.

The executive power of Guam shall be vested in an executive officer whose official title shall be the "Governor of Guam". The Governor of Guam, together with the Lieutenant Governor, shall be elected by a majority of the votes cast by the people who are qualified to vote for the members of the Legislature of Guam. The Governor and Lieutenant Governor shall be chosen jointly, by the casting by each voter of a single vote applicable to both offices. If no candidate receives a majority of the votes cast in any election, on the fourteenth day thereafter a runoff election shall be held between the candidates for Governor and Lieutenant Governor receiving the highest and second highest number of votes cast. The first election for Governor and Lieutenant Governor shall be held on November 3, 1970. Thereafter, beginning with the year 1974, the Governor and Lieutenant Governor shall be elected every four years at the general election. The Governor and Lieutenant Governor shall hold office for a term of four years and until their successors are elected and qualified.

No person who has been elected Governor for two full successive terms shall again be eligible to hold that office until one full term has intervened.

The term of the elected Governor and Lieutenant Governor shall commence on the first Monday in January following the date of election.

No person shall be eligible for election to the office of Governor or Lieutenant Governor unless he is an eligible voter and has been for five consecutive years immediately preceding the election a citizen of the United States and a bona fide resident of Guam and will be, at the time of taking office, at least thirty years of age. The Governor shall maintain his official residence in Guam during his incumbency.

The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam. He may grant pardons and reprieves and remit fines and forfeitures for offenses against local laws. He may veto any legislation as provided in this chapter. He shall appoint, and may remove, all officers and employees of the executive branch of the

C

and sanitary regulations for the protection of Guam against the importation and spread of disease.

**(b) Public Education System.** The Government of Guam shall provide an adequate public educational system of Guam, and to that end shall establish, maintain, and operate public schools according to the laws of Guam.

**(c) Office of Public Prosecutor; Office of Public Auditor.** The Government of Guam may by law establish an Office of Public Prosecutor and an Office of Public Auditor. The Public Prosecutor and Public Auditor may be removed as provided by the laws of Guam.

**(d) (1) Attorney General of Guam.** The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 9-A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

(A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

(B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

**SOURCE:** § 29 of Act of Aug. 1, 1950 (Organic Act). Codified as 48 U.S.C. § 1421g. Subsection (b) amended by 5 and 13(a)(1) of Pub. Law 99-396, Act of Aug. 27, 1986. Subsection (c) added by 13(a)(2) of Pub. Law 99-396, Act of Aug. 27, 1986.



## CHAPTER 16—DELEGATES TO CONGRESS

SUBCHAPTER I—GUAM AND VIRGIN ISLANDS

Sec.
1711. Delegate to House of Representatives from Guam and Virgin Islands.
1712. Election of delegates; majority; runoff election; vacancy; commencement of term.
1713. Qualifications for Office of Delegate.
1714. Territorial legislature; determination of election procedure.
1715. Operation of Office; House privileges; compensation, allowances, and benefits; privileges and immunities; voting in committee.

SUBCHAPTER II—AMERICAN SAMOA

1731. Delegate to House of Representatives from American Samoa.
1732. Election of delegates.
1733. Qualifications for Office of Delegate.
1734. Territorial government; determination of election procedure.
1735. Operation of Office; compensation, allowances, and benefits; privileges and immunities.

SUBCHAPTER III—NORTHERN MARIANA ISLANDS DELEGATE

1751. Delegate to House of Representatives from Commonwealth of the Northern Mariana Islands.
1752. Election of Delegate.
1753. Qualifications for office of Delegate.
1754. Determination of election procedure.
1755. Compensation, privileges, and immunities.
1756. Lack of effect on covenant.
1757. Definition.

SUBCHAPTER I—GUAM AND VIRGIN ISLANDS

### §1711. Delegate to House of Representatives from Guam and Virgin Islands

The territory of Guam and the territory of the Virgin Islands each shall be represented in the United States Congress by a nonvoting Delegate to the House of Representatives, elected as hereinafter provided.

(Pub. L. 92–271, §1, Apr. 10, 1972, 86 Stat. 118.)

### §1712. Election of delegates; majority; runoff election; vacancy; commencement of term

(a) The Delegate shall be elected by the people qualified to vote for the members of the legislature of the territory he is to represent at the general election of 1972, and thereafter at such general election every second year thereafter. The Delegate from the Virgin Islands shall be elected at large, by separate ballot and by a majority of the votes cast for the office of Delegate. The Delegate from Guam shall be elected at large and by a majority of the votes cast for the office of Delegate. If no candidate receives such majority, on the fourteenth day following such election a runoff election shall be held between the candidates receiving the highest and the second highest number of votes cast for the office of Delegate. In case of a permanent vacancy in the office of Delegate, by reason of death, resignation, or permanent disability, the office of Delegate shall remain vacant until a successor shall have been elected and qualified.

(b) The term of the Delegate shall commence on the third day of January following the date of the election.

(Pub. L. 92–271, §2, Apr. 10, 1972, 86 Stat. 119; Pub. L. 105–209, §1, July 29, 1998, 112 Stat. 880.)

#### AMENDMENTS

**1998**—Subsec. (a). Pub. L. 105–209 inserted "from the Virgin Islands" before "shall be elected at large" and inserted "The Delegate from Guam shall be elected at large and by a majority of the votes cast for the office of Delegate." before "If no candidate receives such majority".

### §1713. Qualifications for Office of Delegate

To be eligible for the Office of Delegate a candidate must—
(a) be at least twenty-five years of age on the date of the election,
(b) have been a citizen of the United States for at least seven years prior to the date of the election,
(c) be an inhabitant of the territory from which he is elected, and
(d) not be, on the date of the election, a candidate for any other office.

(Pub. L. 92–271, §3, Apr. 10, 1972, 86 Stat. 119.)

### §1714. Territorial legislature; determination of election procedure

The legislature of each territory may determine the order of names on the ballot for election of Delegate, the method by which a special election to fill a vacancy in the office of Delegate shall be conducted, the method by which ties between candidates for the office of Delegate shall be resolved, and all other matters of local application pertaining to the election and the office of Delegate not otherwise expressly provided for herein.

(Pub. L. 92–271, §4, Apr. 10, 1972, 86 Stat. 119.)

### §1715. Operation of Office; House privileges; compensation, allowances, and benefits; privileges and immunities; voting in committee

The Delegate from Guam and the Delegate from the Virgin Islands shall have such privileges in the House of Representatives as may be afforded him under the Rules of the House of Representatives. Until the Rules of the House of Representatives are amended to provide otherwise, the Delegate from each territory shall receive the same compensation, allowances, and benefits as a Member of the House of Representatives, and shall be entitled to whatever privileges and immunities are, or hereinafter may be, granted to the Resident Commissioner for Puerto Rico: *Provided,* That the right to vote in committee shall be as provided by the Rules of the House of Representatives.

(Pub. L. 92–271, §5, Apr. 10, 1972, 86 Stat. 119; Pub. L. 104–186, title II, §224(4), Aug. 20, 1996, 110 Stat. 1752.)

#### AMENDMENTS

**1996**—Pub. L. 104–186 struck out last two provisos which read as follows: "*Provided further,* That the clerk hire allowance of each Delegate shall be a single per annum gross rate that is 60 per centum of the clerk hire allowance of a Member: *Provided further,* That the transportation expenses of each Delegate that are subject to reimbursement under section 43b of title 2 shall not exceed the cost of four round trips each year."

SUBCHAPTER II—AMERICAN SAMOA

### §1731. Delegate to House of Representatives from American Samoa

The Territory of American Samoa shall be represented in the United States Congress by a nonvoting Delegate to the House of Representatives, elected as hereinafter provided.

### §1732. Election of delegates

#### (a) In general; plurality vote; vacancy

The Delegate shall be elected by the people qualified to vote for the popularly elected officials of the Territory of American Samoa at the general Federal election of 1980, and thereafter at such general election every second year thereafter. The Delegate shall be elected at large, by separate ballot, and by a plurality of the votes cast for the office of Delegate. In case of a permanent vacancy in the office of Delegate, by reason of death, resignation, or permanent disability, the office of Delegate shall remain vacant until a successor shall have been elected and qualified.

#### (b) Commencement of term

The term of the Delegate shall commence on the third day of January following the date of the election.

#### (c) Establishment of primary elections

The legislature of American Samoa may, but is not required to, provide for primary elections for the election of Delegate.

#### (d) Effect of establishment of primary elections

Notwithstanding subsection (a) of this section, if the legislature of American Samoa provides for primary elections for the election of Delegate, the Delegate shall be elected by a majority of votes cast in any subsequent general election for the office of Delegate for which such primary elections were held.

(Pub. L. 95–556, §2, Oct. 31, 1978, 92 Stat. 2078; Pub. L. 108–376, §2, Oct. 30, 2004, 118 Stat. 2200.)

#### AMENDMENTS

**2004**—Subsec. (a). Pub. L. 108–376, §2(1), substituted "plurality of the votes cast" for "majority of the votes cast" and struck out "If no candidate receives such majority, on the fourteenth day following such election a runoff election shall be held between the candidates receiving the highest and the second highest number of votes cast for the office of Delegate." before "In case of".

Subsecs. (c), (d). Pub. L. 108–376, §2(2), added subsecs. (c) and (d).

#### EFFECTIVE DATE OF 2004 AMENDMENT

Pub. L. 108–376, §3, Oct. 30, 2004, 118 Stat. 2201, provided that: "The amendments made by paragraph (1) of section 2 [amending subsec. (a) of this section] shall take effect on January 1, 2006. The amendment made by paragraph (2) of section 2 [adding subsecs. (c) and (d) of this section] shall take effect on January 1, 2005."

#### FINDINGS

Pub. L. 108–376, §1, Oct. 30, 2004, 118 Stat. 2200, provided that: "Congress finds the following:

"(1) It is in the national interest that qualifying members of the Armed Forces on active duty and other overseas voters be allowed to vote in Federal elections.

"(2) Since 1980, when the first election for the Congressional Delegate from American Samoa was held, general elections have been held in the first week of November in even-numbered years and runoff elections have been held 2 weeks later.

"(3) This practice of holding a run-off election 2 weeks after a general election deprives members of the Armed Forces on active duty and other overseas voters of the opportunity to participate in the Federal election process in American Samoa.

"(4) Prior to and since September 11, 2001, and due to limited air service, mail delays, and other considerations, it has been and remains impossible for absentee ballots to be prepared and returned within a 2-week period.

"(5) American Samoa law requiring members of the Armed Forces on active duty and other overseas voters to register in person also prevents participation in the Federal election process and is contrary to the Uniformed and Overseas Citizens Absentee Voting Act [42 U.S.C. 1973ff et seq.].

"(6) Given that 49 states elect their Representatives to the United States House of Representatives by plurality, it is in the national interest for American Samoa to do the same until such time as the American Samoa Legislature establishes primary elections and declares null and void the local practice of requiring members of the Armed Forces on active duty and other overseas voters to register in person which is contrary to the federal Uniformed and Overseas Citizens Absentee Voting Act."

### §1733. Qualifications for Office of Delegate

To be eligible for the office of Delegate a candidate shall—

(a) be at least twenty-five years of age on the date of the election;

(b) owe allegiance to the United States;

(c) be an inhabitant of the Territory of American Samoa; and

(d) not be, on the date of the election, a candidate for any other office.

(Pub. L. 95–556, §3, Oct. 31, 1978, 92 Stat. 2078; Pub. L. 95–584, §3, Nov. 2, 1978, 92 Stat. 2483.)

#### AMENDMENTS

**1978**—Subsec. (b). Pub. L. 95–584 substituted allegiance requirement for provision requiring United States citizenship for at least seven years prior to the date of the election.

### §1734. Territorial government; determination of election procedure

Acting pursuant to legislation enacted in accordance with section 9, article II of the American Samoan Revised Constitution, the territorial government will determine the order of names on the ballot for election of Delegate, the method by which a special election to fill a vacancy in the office of Delegate shall be conducted, the method by which ties between candidates for the office of Delegate shall be resolved, and all other matters of local application pertaining to the election and the office of Delegate not otherwise expressly provided for herein.

(Pub. L. 95–556, §4, Oct. 31, 1978, 92 Stat. 2078.)

### §1735. Operation of Office; compensation, allowances, and benefits; privileges and immunities

Until the Rules of the House of Representatives are amended to provide otherwise, the Delegate from American Samoa shall receive the same compensation, allowances, and benefits as a Member of the House of Representatives, and shall be entitled to whatever privileges and immunities that are, or hereinafter may be, granted to the nonvoting Delegate from the Territory of Guam.

(Pub. L. 95–556, §5, Oct. 31, 1978, 92 Stat. 2078; Pub. L. 97–357, title IV, §401, Oct. 19, 1982, 96 Stat. 1711.)

#### AMENDMENTS

**1982**—Pub. L. 97–357 struck out proviso limiting clerk hire allowance for Delegate from American Samoa to 50 per centum of clerk hire allowance of a Member of House of Representatives.

#### EFFECTIVE DATE OF 1982 AMENDMENT

Section 401 of Pub. L. 97–357 provided that amendment made by that section is effective Jan. 1, 1983.

SUBCHAPTER III—NORTHERN MARIANA ISLANDS DELEGATE

### §1751. Delegate to House of Representatives from Commonwealth of the Northern Mariana Islands

The Commonwealth of the Northern Mariana Islands shall be represented in the United States Congress by the Resident Representative to the United States authorized by section 901 of the Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America (approved by Public Law 94–241 (48 U.S.C. 1801 et seq.)). The Resident Representative shall be a nonvoting Delegate to the House of Representatives, elected as provided in this subchapter.